IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3179-D

| | | |
|---|---|---|
| MOSES LEON FAISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOE LIGHTSEY, | ) | |
| | ) | |
| Defendant. | ) | |

On November 5, 2009, Moses Leon Faison ("Faison" or "plaintiff"), a state inmate previously incarcerated at Central Prison,[1] filed this action against Joe Lightsey ("Lightsey") under 42 U.S.C. § 1983 [D.E. 1]. On July 19, 2010, Lightsey answered the complaint [D.E. 24] and filed a motion to dismiss [D.E. 25], which the court denied on January 31, 2011 [D.E. 34]. On February 1, 2011, Magistrate Judge William A. Webb entered a scheduling order [D.E. 35]. On February 23, 2011, Faison filed a request for production of documents [D.E. 38]. On March 10, 2011, Lightsey filed a motion for a protective order [D.E. 40]. On March 21, 2011, Faison filed a "motion retaliation" [D.E. 46], a motion for oral argument [D.E. 47], a response in opposition to the motion for protective order [D.E. 48] and a second request for production of documents [D.E. 49]. On April 5, 2011, Lightsey filed a second motion for a protective order [D.E. 54]. On April 12, 2011, Faison responded in opposition to the second motion for a protective order [D.E. 59], filed a motion for appointment of counsel [D.E. 60], and filed a document entitled "dismiss summary judgment" [D.E. 61] and an affidavit in support [D.E. 62].

---

[1] Faison is currently incarcerated at Lanesboro Correctional Institution. See N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0125598&searchOffenderId=0125598&listurl=pagelistoffendersearchresults&listpage=1 (last visited Sept. 30, 2011).

On April 28, 2011, Lightsey moved for summary judgment [D.E. 63], and filed a memorandum of law, supporting affidavit, and exhibits [D.E. 64–65]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Faison about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 66]. On May 4, 2011, after receiving an extension of time, Lightsey responded in opposition to Faison's "motion retaliation" and filed an affidavit in support [D.E. 67–68]. On May 10, 2011, Faison responded in opposition to the motion for summary judgment, and submitted an affidavit in support [D.E. 69–70]. On May 12, 2011, Faison filed an affidavit in support of his "motion retaliation" [D.E. 71]. As explained below, the court grants Lightsey's motion for summary judgment, denies Faison's motion concerning retaliation, and denies Faison's motion for appointed counsel.

I.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact regarding trial. See Matsushita Elec. Indus. Co., 475 U.S. at 587. There is no issue for trial unless there is sufficient evidence favoring the nonmoving

2

party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

In the light most favorable to Faison, the facts are as follows. In early 2009, Faison began to complain of chest pain. Lightsey Aff. [D.E. 64] ¶ 6. Lightsey prescribed the pain reliever Indomethacin, but on February 7, 2009, Faison stated that "it was not helping his chest pain and . . . requested a change in medication." Id. & Ex. B. On February 11, 2009, Lightsey reviewed Faison's chart, discontinued Indomethacin, and ordered Percogesic. Id. On February 12, 2009, Faison again "complained that the pain medications that had been previously prescribed did not alleviate his chest pain." Id. ¶ 7 & Ex. C. On February 18, 2009, Lightsey examined Faison, found no objective evidence of a cardiovascular issue, and therefore ordered Reglan and Zantac and "a barium swallow test to rule out esophageal diverticulum and gastroesophageal reflux disease (GERD)[,] . . . which was [ultimately] performed at Wake Medical Center on March 16, 2009." Id. "[T]he barium enema failed to show a gastrointestinal etiology for [Faison's] discomfort." Id. ¶ 12 & Ex. H.

On February 19, 2009, Faison stated that he continued to have chest pain (which he rated at a 6 on a scale of 1 to 10) and "the medications . . . that [Lightsey] prescribed caused him to vomit." Id. ¶ 8 & Ex. D. On March 4, 2009, Lightsey examined Faison and ordered a different medication (Bentyl). Id. ¶ 9. On March 15, 2009, Faison complained of chest pain. Id. ¶ 10. On March 16, 2009, a nurse examined Faison, and Faison requested a prescription for Neurotonin. Id. ¶ 10 & Ex. F. On March 23, 2009, Lightsey instructed the nursing staff "to crush the Bentyl and mix the medication with water, to ensure that inmate Faison was not diverting his medication, or using the

3

medication for recreational purposes." Id. n.9 & Ex. F.

On March 24, 2009, Faison "declared a medical emergency for complaints of chest pain . . . . [and] requested something to treat the pain." Lightsey Aff. ¶ 11 & Ex. G. A nurse examined him and gave him four packs of Acetominophen 325mg. Id. On March 25, 2009, Lightsey examined Faison and diagnosed him with "1) costachondritis (inflammation of chest wall cartilage causing chest pain); and 2) chest pain with unknown etiology." Id. ¶ 12 & Ex. H. Lightsey "discontinued Bentyl, increased inmate Faison's dosage of Reglan . . . and ordered . . . a chest CT scan to rule out thoracic spine spurs or a post-traumatic mass." Id. The chest CT scan was performed on May 19, 2009, and "revealed degenerative endplate osteophytosis (bony spurs or outgrowths of the endplate) throughout the spine but was otherwise unremarkable." Id. ¶¶ 19, 22 & Exs. O, R. On April 5 and 9, 2009, Faison again complained of chest pain. Id. ¶¶ 13–14 & Exs. I–J. Nurses examined Faison and observed (among other things) that Faison "was in no acute distress[,]" his vital signs were normal, he "was alert and oriented to time, place and person[,]" he had "no extremity edema (swelling), and he had no tenderness of the chest area on palpation." Id.

On April 12, 2009, Faison began complaining of pain in his mouth. Id. ¶ 15 & Ex. K. On April 15, 2009, Lightsey reviewed Faison's medical chart and "ordered Percogesic (pain reliever) . . . along with Indocin (pain reliever)[.]" Id. ¶ 16. On April 16, 2009, Faison refused to take the prescribed medications, stating they did not help him. Id. ¶ 17 & Exs. L–M. On April 16 and 20, 2009, Faison again complained of chest pain. Id. ¶ 17 & Ex. M. On April 23, 2009, a nurse examined Faison and noted that his "breathing was even and unlabored, that he had no extremity edema (swelling) and that [his] chest area was non-tender to palpation. The nurse further noted . . . . Faison was in no apparent distress." Id. On April 29, 2009, Lightsey examined Faison, diagnosed him with "chest pain of unknown etiology" and "ordered Darvocet-N (pain reliever)[.]" Id. ¶ 18 &

4

Ex. N. During that examination, Lightsey "also noted a foot deformity and that the soles of . . . Faison's Dr. 2 Shoes were deteriorating and . . . ordered Dr. 2 Shoes with arch insoles after assessing that inmate Faison had a unilateral hammer toe." Id. n.13.

On May 25, 2009, Faison again complained of chest pain, and on May 28, 2009, a nurse examined him. Id. ¶ 19 & Ex. O. During the examination, "Faison stated he had 'nerve pain' from his left forearm radiating to his shoulder and left chest . . . . Faison further stated that he was on Neurontin 'on the street' and that it provided some relief, while the Darvocet he was currently taking only provided slight relief." Id. On May 30 and June 2, 2009, Faison submitted duplicate sick call forms regarding his Dr. 2 shoes and inquiring as to whether his pain medications had been changed. Id. ¶ 20 & Ex. P. On June 3, 2009, Lightsey reviewed Faison's medical chart, "noted that there was no indication for Neurontin[,] . . . [and,] after being notified by the nurse that inmate Faison refused to take his medications, . . . discontinued his prescriptions for Reglan, Percogesic and Indocin, and noted that these were being discontinued because inmate Faison refused to take them." Id. However, Lightsey did not discontinue Faison's prescription for Darvocet. Id.

On June 8, 2009, a nurse examined Faison in response to his complaint that Darvocet "'only took the edge off the pain'" and again requested Neurontin. Id. ¶ 21 & Ex. Q. Between June 9 and 12, 2009, Faison submitted four sick call forms complaining of chest pain. Id. ¶ 22 & Ex. R. On June 17, 2009, Lightsey examined Faison, and as a result of the May 19, 2009 CT scan, diagnosed him with "neuralgia (pain that follows the path of the nerve) secondary to thoracic (related to the chest) arthritis." Id. Lightsey "ordered Naprosyn (an anti-inflammatory drug used to treat pain and inflammation caused by arthritis) . . . and Tegretol (for nerve pain)[.]" Id. On July 6, 2009, a nurse examined Faison in response to his complaint "about chest pain running from his arm to his chest" and "noted that his left arm/chest area was tender to palpation, that he had full range of motion and

5

that he was in no apparent distress." Id. ¶ 23 & Ex. S.

On July 8 and 9, 2009, Faison "complained of mouth and jaw pain from a previously broken jaw and requested to see the dentist." Id. ¶ 24 & Ex. T. A nurse and a dentist (Dr. Harris) reviewed the sick call forms and noted that Faison was scheduled to see an oral surgeon (Dr. Waack) on July 22, 2009, and a dentist on August 19, 2009. Id. On July 15, 2009, Dr. Harris examined Faison in response to his complaint of right jaw pain and "noted that inmate Faison claimed that his jaw pain started about three weeks ago after he ran into a cabinet." Id. ¶ 25 & Ex. U. "Faison did not mention a 'traumatic blow' to his jaw area in any of the [sick call forms]." Id. n.20. Dr. Harris "completed a medical history review, a limited oral evaluation and two panorex films" and "noted that he could not determine any definitive cause of pain other than inmate Faison's report of a traumatic blow . . . Dr. Harris did not see any intra- or external swelling and noted that inmate Faison's occlusion (the way in which upper and lower teeth come into contact with each other) was good." Id. ¶ 25 & Ex. U. "Dr. Harris ordered Clindamycin (an antibiotic) . . . and Motrin . . . for dental pain." Id.

On July 18, 2009, Faison "complained of pain moving from his left arm to chest." Id. ¶ 26 & Ex. V. On July 20, 2009, a nurse examined Faison in response to "Faison's declaration of a medical emergency for chest pain[,]" during which "Faison stated he needed his medications reordered and . . . [that] Naprosyn and Tegretol . . . were effective." Id. Lightsey reviewed and approved Faison's request to reorder Naprosyn and Tegretol. Id. On July 22, 2009, Dr. Waack examined Faison, who "complained of pain along his right jaw line and along the mucosa (lining of the inside of the mouth) on an intermittent basis for over three weeks since trauma." Id. ¶ 27 & Ex. W. Faison requested a prescription for "Neurontin, to which Dr. Waack indicated he was not opposed." Id.; see also Compl. ¶¶ 4–5. "Dr. Waack noted there may have been some edema (swelling) in the joints from the trauma that he expected to resolve shortly" and "recommended jaw

6

rest and a short course of Neurontin." Lightsey Aff. ¶ 27 & Ex. W. Lightsey reviewed Faison's chart and "discontinued the other pain medications that had been recommended by the dental clinic, . . . noting that inmate Faison was to continue taking Tegretol and Naprosyn as previously ordered." Id.

On August 19, 2009, Faison returned to Dr. Waack for a follow up evaluation. Id. ¶ 29 & Ex. Y. Dr. Waack found "no evidence of fracture from the recent trauma last month nor were there any other surgical requirements at that time[,]"apparently in response to Faison's dissatisfaction with being denied treatment with Neurontin, "noted that there was no reason to feel that Neurontin would be any more effective than an anti-inflammatory or Tegretol." Id. On September 1, 2009, Faison submitted a sick call form "request[ing] to be seen by the oral surgeon for his mouth pain." Id. ¶ 30 & Ex. Z. A dentist (Dr. Grantham) reviewed the form and noted Faison was scheduled for a dental visit on September 20, 2009. Id.

On September 1, 2009, Faison complained of "[fungus] on his right toe and lower back pain." Id. Aff. ¶ 31 & Ex. AA. On September 3, 2009, a nurse examined him and observed that Faison had "normal range of motion in [his] left arm and . . . no problems getting on or off the exam table." Id. The nurse gave Faison antifungal cream for his foot. Id. On September 9, 2009, Faison complained of lower back pain and requested medication, and Lightsey reviewed Faison's chart and reordered Tegretol and Naprosyn. Id. ¶ 32 & Ex. BB.

On September 13, 2009, Faison submitted two sick call forms, "one in which he inquired as to the status of medication for his lower back pain and the other in which he requested a dental visit for his mouth pain." Id. ¶ 33 & Ex. CC. On September 14, 2009, the triage nurse reviewed the forms. Id. On September 15, 2009, a nurse noted that Faison was receiving Naprosyn and Tegretol, and Dr. Grantham noted that Faison was scheduled for a dental visit on September 30, 2009. Id.

7

On September 27, 2009, Faison "declar[ed] . . . a medical emergency for chest pain" and was examined by a nurse, who "noted inmate Faison was alert and oriented to time, place and person (times three), he had even and unlabored respirations, no diaphoresis (sweating) and nonradiating pain" and normal vital signs. Id. ¶ 34 & Ex. DD. Faison rated his pain as a 6. Id. "The nurse's assessment was non-cardiac related chest discomfort and encouraged inmate Faison as to liberal fluid intake (drinking a lot of water)." Id. A nurse examined Faison again the next day in response to a sick call form complaining of arm, chest and lower back pain and decided to "discuss an increase in medication with the doctor at the next clinic." Id. ¶ 35 & Ex. EE. On September 30, 2009, Lightsey reviewed the nurse's request for a medication increase and determined "there was no indication for an increase in Naprosyn and Tegretol to three times a day." Id. On the same day Dr. Grantham "submitted a UR request for inmate Faison to be seen by a UNC oral maxillofacial surgeon." Id.

On October 22, 2009, Dr. Blakey, an oral surgeon at the University of North Carolina Hospital examined Faison. Id. ¶ 37 & Ex. GG. Dr. Blakey "had . . . previously treated [Faison] for a fracture in 2006 at Pitt Memorial Hospital" and recalled having Faison as a patient. Id. ¶ 37 & Ex. GG. During the examination, Faison "complained of swelling and intermittent pain of his right mandible along the distribution of the jaw." Id. Dr. Blakey reviewed the X-rays taken by Dr. Harris and "reviewed the site of the previous plate removal, which appeared to be normal." Id. "He noted inmate Faison was able to detect a sharp pin prick sensation but his right jaw dentition was not sensitive to palpation." Id. Dr. Blakey "suspected the swelling may be dysesthesia (a condition in which normal stimulus, such as a light touch, is perceived as painful or otherwise unpleasant) or dental etiology, however, there was no sign of a dental etiology at that time." Id. Dr. Blakey ordered a prescription mouth rinse and recommended switching from Tegretol to Neurontin or Ultram. Id.

8

On October 26, 2009, Lightsey reviewed Faison's chart and determined "that there was still no indication for Neurontin[.]" Id. ¶ 37 & Ex. GG; see also Compl. ¶ 4. On October 23 and 24, 2009, Faison submitted three identical sick call forms inquiring "as to the status of the pain medication recommended by . . . Dr. Blakey and request[ing] to be seen in the dental clinic." Lightsey Aff. ¶ 38 & Ex. HH. On October 29, 2009, a nurse examined Faison in response to complaints of increased chest pain, back pain, arm pain and difficulty breathing due to sinus problems. Id. ¶ 39 & Ex. II. During the examination "Faison . . . requested information on the status of the pain medication ordered by Dr. Blakey[.]" Id. The nurse "noted that, upon examination, inmate Faison had no difficulty opening his mouth wide[,] . . . even, unlabored respirations, clear lungs, no wheezing, no rales (crackling sound in lungs), no grunting and no cough. Her assessment was that inmate Faison was in no apparent distress[.]" Id.

On November 5, 2009, Faison filed this action [D.E. 1]. In April 2010, Faison began treatment with Ultram (pursuant to a prescription from Dr. Blakey), which appears to have resolved his pain. Pl. Aff. Opp'n Mot. Summ. J. at 9–11. In February 2011, Lightsey renewed Faison's prescription for Ultram. 2nd Lightsey Aff., Ex. C.[2]

In order to establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225,

---

[2] Lightsey's affidavit states that he ordered Ultram for Faison on February 2, 2009. 2d Lightsey Aff. ¶ 7. Faison takes issue with the February 2, 1999, date. See Pl.'s Reply Supp. Mot. Retaliation. The date is nothing more than a simple typographical error. The pertinent medical record is clearly dated February 2, 2011.

9

241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Lightsey contends that he is entitled to summary judgment because the medical record shows that, over the course of eight months, Lightsey personally examined Faison five times, ordered several diagnostic tests, and reviewed his medical chart five times. Mem. Supp. Mot. Summ. J. at 24–25. Faison relies on the court's prior order denying Lightsey's motion to dismiss and notes that Lightsey rejected two specialists' prescriptions for Neurontin. [D.E. 69]. Additionally, Faison objects to the court's consideration of any treatment Lightsey provided for his other medical issues as that medical treatment "has nothing to do with this claim at all . . . [which] is about the pain in I Faison mouth[.]" Pl. Aff. Opp'n Mot. Summ. J. at 2.

Faison contends and Lightsey appears to concur that Lightsey's refusal to dispense Neurontin to Faison was based on Lightsey's belief that "abuse of the drug Neurontin (Gabapentin) is a common occurrence among the prison population" and Faison may have been "engag[ing] in drug-seeking behavior . . . and . . . fabricating and/or exaggerating [his] symptoms to obtain such

10

medication[,]" rather than on any medical determination that Neurontin was not an appropriate treatment for Faison's pain. Lightsey Aff. ¶ 41 at 24; see Pl. Aff. Opp'n Mot. Summ. J. at 1 (Lightsey "refus[ed] to write the order for the medication that the oral surgeon request due to how people he said he gave the medication in the past that didn't need it and they miss use [sic] it and the defendant stated he wasn't going to request it and that was final"). Over an eight-month period, Faison submitted thirty-four sick call forms complaining of a wide range of health issues which often could not be substantiated by objective examination. However, even if Lightsey was wrong in his assessment of Faison's actions, in light of the record, Lightsey's refusal to prescribe Neurontin does not rise to a level of deliberate indifference. See, e.g., Lacy v. Shaw, 357 F. App'x 607, 610 (5th Cir. 2009) (per curiam) (unpublished); Kimpel v. California Dept. of Corrs., No. 08CV1734-LAB(JMA), 2010 WL 532522, at *5 (S.D. Cal. Feb. 8, 2010) (unpublished); Atakpu v. Lawson, No. 1:05-CV-00524, 2008 WL 5233467, at *11 (S.D. Ohio Dec. 11, 2008) (unpublished); McManus v. Schilling, No. 2:07cv74, 2008 WL 682577, at *8 (E.D. Va. Mar. 7, 2008) (unpublished).

II.

Next, the court addresses Faison's "motion retaliation" [D.E. 46]. Faison asserts that on February 2, 2011, Lightsey improperly prescribed high blood pressure medication and a low-sodium diet for him. Mot. Retaliation at 1–2. It is not clear what Faison means by "retaliation," i.e., whether he is asserting that Lightsey prescribed the medication and diet because Faison filed a suit against him or for some other reason. Faison attached to his reply a copy of a grievance response indicating that he apparently had an unpleasant interaction with a nurse on December 22, 2010. Reply Supp. Mot. Retaliation, Ex. 2. Regardless of the basis for the claimed retaliation,

> in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [28 U.S.C.] § 1915[(e)(2)(B)]. To hold otherwise would be to bring

11

> virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . penal institutions.

Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). To survive frivolity review, Faison "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. Faison presents nothing more than naked assertions of retaliation. Moreover, Faison's allegations fail to allege that Lightsey infringed any constitutionally protected right. Thus, the court denies the motion.

Finally, as for Faison's motion for appointment of counsel [D.E. 60], no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. The facts of this case, and Faison's abilities do not present exceptional circumstances. Accordingly, the court denies Faison's motion to appoint counsel.

### III.

For the reasons stated, the court GRANTS defendant's motion for summary judgment [D.E. 63]. The court DENIES AS MOOT defendant's motions for a protective order [D.E. 40, 54] and DENIES plaintiff's "motion retaliation" [D.E. 46], motion for oral argument [D.E. 47], and motion for appointment of counsel [D.E. 60]. The clerk shall close the case.

SO ORDERED. This 30 day of September 2011.

JAMES C. DEVER III
United States District Judge

13